## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**LEONORIS MILLER,**

     **Petitioner,**

**v.**                        **Case No. 4:14cv81-RH/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,[1]**

     **Respondent.**
                         **/**

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On February 18, 2014, Petitioner Leonoris Miller, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.   On September 24, 2014, Respondent filed an answer, with exhibits.   ECF No. 18.   Petitioner filed a reply on November 12, 2014. ECF No. 15.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).   After careful consideration

---

[1]The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida Department of Corrections, for Michael D. Crews.   Julie Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

of all issues raised, the undersigned has determined that no evidentiary
hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov.
§ 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the
pleadings and attachments before the Court show that Petitioner is not
entitled to federal habeas relief, and this § 2254 petition should be denied.

## Background and Procedural History

By amended information filed March 27, 2007, in case number
05CF01311, in the Second Judicial Circuit, Leon County, the State of
Florida charged Petitioner, Leonoris Miller, with two counts in connection
with events that took place on or between September 1, 1999, and May 31,
2001, involving victim B.C.:   (1) sexual battery on a child under 12 years of
age by a defendant 18 years of age or older, a capital felony, in violation of
section 794.011(2)(a), Florida Statutes; and (2) lewd and lascivious
molestation, a life felony, in violation of section 800.04(5)(b), Florida
Statutes.   Ex. C at 2.[1]   *See id.* at 1 (original information, filed May 5,
2005).   Miller proceeded to a one-day jury trial on March 28, 2007, before

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted
with Respondent's answer, ECF No. 11.

Judge Kathleen Dekker.   Ex. H (trial transcript).   Miller testified during the trial.   *Id.* at 226-39.   The jury found him guilty as charged on both counts. *Id.* at 297-99; Ex. C at 97-100.   In a Judgment and Sentence rendered March 30, 2007, the state trial court adjudicated Miller guilty and sentenced him to life in prison on each count, to run concurrently, with jail credit for 713 days.   Ex. C at 101-09; *see* Ex. H at 301-02.

Miller appealed his conviction and sentence to the First District Court of Appeal (DCA), assigned case number 1D07-2049, raising five points of error.   Ex. J (Initial Brief); Ex. K (Answer Brief); Ex. L (Reply Brief).   On October 19, 2009, the First DCA affirmed the case per curiam without a written opinion.   Ex. M; Miller v. State, 19 So. 3d 988 (Fla. 1st DCA 2009). The mandate issued November 4, 2009.   Ex. N.

During the pendency of the direct appeal, on August 16, 2007, Miller, through counsel, filed a Motion to Correct Sentencing Error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).   Ex. C at 118-22.   He argued his life sentence on Count 2, lewd and lascivious molestation, was illegal and unconstitutional.   *Id.*   By order rendered November 27, 2007, Judge Dekker amended Miller's judgment and sentence to reflect that his

sentence on Count 2 is fifteen (15) years in prison, to run concurrent with his sentence on Count 1.   *Id.* at 123.

On February 5, 2010, Miller filed a pro se Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) in the state trial court.   Ex. P at 1-3.   By order on March 18, 2010, the state court, Judge Mark E. Walker, denied the motion.   Ex. P at 4-5.   Miller, proceeding pro se, appealed to the First DCA and did not file a brief in case number 1D10-2206.   *See* Ex. Q.   On June 10, 2010, the First DCA per curiam affirmed the appeal without a written opinion.   Ex. R; Miller v. State, 37 So. 3d 853 (Fla. 1st DCA 2013) (table).   The mandate issued July 7, 2010.   Ex. S.

On December 9, 2010, Miller filed a Motion for Post-Conviction Relief pursuant to Florida Rule of Criminal Procedure 3.850.   Ex. U at 1-28.   The state post-conviction trial court, Judge Charles W. Dodson, denied the motion by orders dated August 21, 2011, and June 12, 2012.   Ex. U at 34-100.   The second order was entered following an evidentiary hearing, which took place April 26, 2012, during which Miller was represented by counsel.   *Id.* at 103-64.

Miller, through counsel, appealed the denial of the Rule 3.850 motion to the First DCA and filed a brief, assigned case number 1D12-3725.   Ex. V.   The initial brief raised one point of error:   "It was reversible error for the trial court to allow the videotaped interview of the child victim to be taken back to the jury room for the jury to use during deliberations."   *Id.* at ii; *see* Ex. X.   The State filed an answer brief.   Ex. W.   On September 6, 2013, the First DCA per curiam affirmed the case without a written opinion. Ex. Y; <u>Miller v. State</u>, 123 So. 3d 564 (Fla. 1st DCA 2013) (table).   On October 21, 2013, the court denied Miller's motions for rehearing, rehearing en banc, issuance of an opinion, and certification of question.   Ex. Z (motions); Ex. AA (order).   The mandate issued November 6, 2013.   Ex. BB.

On January 6, 2014, Miller filed a petition for writ of habeas corpus in the state trial court, alleging ineffective assistance of post-conviction counsel for failure to provide a supporting memorandum to the post-conviction trial court.   Ex. DD at 1-7.   The state court, Judge Jackie L. Fulford, denied the petition by order rendered January 17, 2014.   *Id.* at 6-7.   Miller appealed to the First DCA, and the First DCA per curiam affirmed

the case, assigned number 1D14-0733, without a written opinion on June

12, 2014.   Ex. EE; <u>Miller v. State</u>, 143 So. 3d 926 (Fla. 1st DCA 2014).

The mandate issued July 8, 2014.   Ex. FF.

As indicated above, Miller filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in this Court on February 18, 2014.   ECF

No. 1.   He raises six grounds, all alleging ineffective assistance of counsel

(IAC):

> (1)  Trial counsel failed "to object to prejudicial out-of-court hearsay statements in violation of the State and U.S. Constitution.   *Id.* at 3; *see id.* at 3-4.

> (2)  Trial counsel failed "to challenge and notify the court of the prejudicial consequences in allowing a videotaped interview into the jury's deliberation."   *Id.* at 4; *see id.* at 4-5.

> (3)  Trial counsel failed "to challenge the admissibility of prejudicial testimony regarding anal/vaginal penetration and argue for its exclusion because it introduced irrelevant and immaterial evidence."   *Id.* at 5; *see id.* at 5-6.

> (4)  Trial counsel failed "to object to testimony of Child Protective Team member expressing personal belief of Defendant's guilt that impermissibly vouched and bolstered the victim's credibility."   *Id.* at 6; *see id.* at 6-7.

> (5)  Trial counsel failed "to consult and retain a child abuse interview expert regarding proper interview techniques."   *Id.* at 9; *see id.* at 9-11.

(6)  Petitioner Miller was "denied state and federal due process because initial review collateral counsel failed to provide controlling points of law in support of arguments at evidentiary hearing."  *Id.* at 11; *see id.* at 11-12.

Respondent has filed an answer, with exhibits.   ECF No. 11.   Petitioner

has filed a reply.   ECF No. 15.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.   Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 131 S.Ct. 1388, 1398

(2011); Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633 F.3d

1272 (11th Cir. 2011).   "This is a 'difficult to meet' and 'highly deferential

standard for evaluating state-court rulings, which demands that state-court

decisions be given the benefit of the doubt.'"   <u>Cullen</u>, 131 S.Ct. at 1398

(quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011), and <u>Woodford v.

Visciotti</u>, 537 U.S. 19, 24 (2002)).   This Court's review "is limited to the

record that was before the state court that adjudicated the claim on the

merits."   <u>Cullen</u>, 131 S.Ct. at 1388.

For claims of ineffective assistance of counsel (IAC), the United

States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.   This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.   Second,
> the defendant must show that the deficient performance
> prejudiced the defense.   This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

<u>Strickland</u>, 466 U.S. at 687.   To demonstrate ineffectiveness, a "defendant

must show that counsel's performance fell below an objective standard of

reasonableness."   *Id.* at 688.   To demonstrate prejudice, a defendant

"must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. "A reasonable probability is a probability sufficient

to undermine confidence in the outcome." *Id.* For this Court's purposes,

importantly, "[t]he question 'is not whether a federal court believes the state

court's determination' under the <u>Strickland</u> standard 'was incorrect but

whether that determination was unreasonable – a substantially higher

threshold.'" <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting

<u>Schiro v. Landrigan</u>, 550 U.S. 465, 473 (2007)). "And, because the

<u>Strickland</u> standard is a general standard, a state court has even more

latitude to reasonably determine that a defendant has not satisfied that

standard." *Id.* It is a "doubly deferential judicial review that applies to a

<u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.*

## **Ground 1: IAC – Hearsay Statements**

In his first ground, Petitioner Miller argues his trial counsel provided

ineffective assistance because he failed to object to hearsay statements

that did not meet the requirements of section 90.803(23), Florida Statutes.

ECF No. 1 at 3-4. Miller raised this ground in state court as the first claim

in his Rule 3.850 motion. Ex. U at 2-4. As Respondent indicates,

however, Miller did not raise the denial of this claim as a point of error in

the appeal of the denial of the Rule 3.850 motion. *See* Ex. V; ECF No. 11

at 8.   Accordingly, Miller did not properly exhaust this claim in state court and it is now procedurally defaulted and should not be considered by this court unless Miller shows cause for and prejudice from the default.

Regardless of any default, however, on the merits, the ground should be denied.   Miller asserts counsel should have objected to the following statements:

> Q.   And who else was at this sleepover?
>
> A.   Both my friends Autumn and Yishara.
>
> . . . .
>
> Q.   Okay.   And do you know what time you got back to your house on Sunday?
>
> A.   Somewhere in the afternoon.
>
> Q.   Okay.   And is that the night that you told your mom what had happened?
>
> A.   Yes.
>
> Q.   And why did you tell your mom then?
>
> A.   Because my sister, Autumn, said if you can tell me, then you can tell your mom.
>
> Q.   Okay.   You had told your godsister, Autumn, what happened?
>
> A.   Yes.

> Q.   Why did you tell her?
>
> A.   Because she had told me what happened to her one time.
>
> Q.   So something happened to her too?
>
> A.   Yes.
>
> Q.   And is that when you decided you would tell your mom?
>
> A.   Yes.

Ex. F at 98-99.   *See* Ex. U at 3-4; ECF No. 1 at 4.   Miller also takes issue

with some questions defense counsel asked on cross-examination:

> Q.   Okay.   Now one of the girls there told you something happened to them, right?
>
> A.   Yes.
>
> Q.   Which one of them?
>
> A.   My godsister, Autumn.
>
> Q.   Okay.   What did she tell you?
>
> A.   That something else happened to her when she was little.
>
> . . . .
>
> Q.   Did she say that she felt pain?
>
> A.   No.
>
> Q.   You know what I mean I don't mean pain like physical pain,

I mean did she feel sad?

    A.   No.

Ex. F at 111-12.   *See* Ex. U at 4; ECF No. 1 at 4.

The state post-conviction court denied this claim, finding the

statements were not hearsay:

> Defendant claims counsel was ineffective for failing to object to a hearsay statement made by a child, to the victim, regarding the child's past sexual abuse.   The statement was first introduced through the direct testimony of the victim when the prosecutor asked her what prompted her to tell her mother about sexual abuse which had occurred years earlier.   *Exh. 1 – Jury Trial, pp. 77-80, 97-101.*   Consequently, the statement was not offered for its truth, and a hearsay objection would have failed.   *E.g., Foster v. State*, 778 So. 2d 906, 914-15 (Fla. 2000).   As for the child's statement elicited from the victim by defense counsel on cross-examination, even if it did constitute hearsay, it was identical to the permissible, non-hearsay statement given on direct, and therefore not prejudicial.   *Exh. 1, pp. 110-12.*   The Court would also note that contrary to Defendant's assertions, no logical inference could have been drawn from the statement at issue that he was responsible for the other child's abuse.   For all of the foregoing, Defendant's claim fails.

Ex. U at 34-35.   On appeal, the First DCA affirmed.   These rulings are

entitled to AEDPA deference and review is limited to the record before the

state court.   *See* 28 U.S.C. § 2254(d); <u>Cullen</u>, 131 S. Ct. at 1402; <u>Richter</u>,

131 S. Ct. at 784-85; <u>Wright</u>, 278 F.3d at 1255.

The record supports the post-conviction court's findings.   In

particular, as that court found, the first statement came in during the direct testimony of the victim and was not offered for its truth; rather, it was offered to explain why the victim told her mother at that point about the incidents giving rise to the charges in this case.   Ex. H at 98-100.   Thus, as the state court concluded, a hearsay objection would have been overruled.   *See, e.g.*, Foster, 778 So. 2d at 914-15 ("As defined in section 90.801(1)(c), Florida Statutes (1997), "'[h]earsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."   A statement may, however, be offered to prove a variety of things besides its truth.").   The second statement was elicited by defense counsel on cross of the victim and was similar to the first.

Based on the foregoing, Miller has not shown the state court's rejection of this ground was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

## <u>Ground 2</u>:   IAC – CPT Videotape

In his second ground, Petitioner Miller asserts trial counsel provided

ineffective assistance by not objecting when the videotape of the CPT

interview, which had been admitted into evidence, was allowed to go back

with the jury during the jury's deliberations.   ECF No. 1 at 4-5.   Miller

raised this ground as the second claim in his Rule 3.850 motion.   Ex. U at

5-7.   After the evidentiary hearing, the state post-conviction court denied

the claim, making the following findings:

1.    In claim two the defendant alleges trial counsel was
ineffective for failing to object to the video tape interview of
the victim to go back with the jury.

2.    When the defendant's trial began in 2007, trial counsel,
Debra Whisnant had been a practitioner in the State of
Florida some 27 years specializing in criminal law and had
represented criminal defendants accused of sexual offenses
in hundreds of cases.

3.   Trial counsel testified that she was aware that she could
keep the video tape from going back to the jury room and
require the jury to view it in the presence of the parties and
the court.

4.    While trial counsel on direct indicated she could not
remember any strategic reason for allowing the tape to go to
the jury room in this case, on cross, when it was pointed out
that [at] page 267 of the trial transcript she had specifically
asked the jury to focus on the video tape, she indicated she
must have had [a] strategic reason for the tape to go back to
the jury room.   She also testified that in other cases she had

allowed it to go to the jury room when she wanted the jury to focus on something on the video tape.

5.    Given the extensive experience of trial counsel, her knowledge of her ability to keep the video tape from going to the jury room, her asking the jury to focus on portions of the video in closing arguments, and her having used this same strategy in other trials, the Court finds that the defendant has not proven that trial counsel conduct was deficient in this case.

6.    As to the prejudice prong of *Strickland*, the defendant has not put on any evidence of prejudice.   He has not shown in the record or in the evidence at the post conviction hearing that the jury viewed, or even had the means to view, the video tape in the jury room.   Therefore, the Court finds the defendant has failed to prove any prejudice from the video tape going back to the jury room.

7.    Claim two of the defendant's post-conviction motion is denied.

Ex. U at 95-96.   On appeal, the First DCA affirmed.   The state court's ruling is entitled to deference and review is limited to the record before the state court.   *See* Cullen, 131 S.Ct. at 1388.

The record supports the post-conviction court's findings.   In particular, at the evidentiary hearing, Miller's trial counsel, Deborah Whisnant, indicated on cross-examination that she may have had a strategic reason for not objecting to the CPT tape going back with the jury as she directed the jury to the tape during her closing argument:

Q   So you actually pointed to the jury that you wanted them to take a look at something on the tape?

A   I did.   I did remember that.   I didn't read the arguments in this case at all.

Q   All right.   So that being the case, there is at least some record evidence that the reason could have been a strategic reason since, one, you knew that you could object, you have objected before, you have objected since; and in this case in closing argument you specifically asked the jury to consider that part of the tape?   Is that correct?

A   Yes, I did.

Ex. U at 136-37; *see id*. at 118-19, 135.   Further, as the state court indicated, Miller did not show that, during the deliberations, the jury viewed, or even had the means to view, the videotape.   Thus, even assuming deficient performance by defense counsel, Miller did not show prejudice.

Based on the foregoing, Miller has not shown the state court's rejection of this ground was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

## Ground 3:   IAC – Penetration Evidence

In his third ground, Petitioner Miller asserts defense counsel provided

ineffective assistance by not challenging "the admissibility of prejudicial testimony regarding anal/vaginal penetration and argue for its exclusion because it introduced irrelevant and immaterial evidence."   ECF No. 1 at 5. Miller raised this ground in state court as the seventh claim in his Rule 3.850 motion.   Ex. U at 20-23.   As Respondent indicates, however, Miller did not raise the denial of the claim as a point of error in his pro se appeal of the denial of the Rule 3.850 motion.   *See* Ex. V; ECF No. 11 at 17-18. Accordingly, Miller did not properly exhaust this claim in state court and it is now procedurally defaulted unless he can show cause for and prejudice from the default.

Regardless of any default, on the merits, the ground should be denied.   After the evidentiary hearing, the state post-conviction trial court denied the claim, making the following findings:

> Defendant claims counsel was ineffective for failing to object to testimony of anal and vaginal penetration on the basis that it was irrelevant and unduly prejudicial since he was charged with Sexual Battery by penetration of the victim's mouth.   This argument ignores the fact that the testimony remained relevant and highly probative to his Lewd and Lascivious Molestation charge, and therefore an objection on those grounds would have failed.   Exh. 1, pp. 88-96, 167-68, 185-86; Exh. 2 – Information.   *See* § 800.04, Fla. Stat. (1999).

Ex. U at 35.   The state court's ruling is entitled to deference and review is

limited to the record before the state court.    *See* <u>Cullen</u>, 131 S.Ct. at 1388.

The state post-conviction court did not unreasonably conclude the testimony was relevant to Miller's charge of lewd and lascivious molestation.    Section 800.04(5), Florida Statutes, proscribes lewd and lascivious molestation and provides:

(5)   Lewd or lascivious molestation. –

(a)   A person who intentionally touches in a lewd or lascivious manner the breasts, <u>genitals, genital area, or buttocks</u>, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator, commits lewd or lascivious molestation.

(emphasis added).   Because the testimony was relevant to this charge, the state post-conviction court did not unreasonably conclude an objection would have failed and, therefore, defense counsel was not deficient.

Based on the foregoing, Petitioner Miller has not shown the state court's rejection of the claims in this ground was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See id.*; 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

## Ground 4:   IAC – Testimony of CPT Member

In his fourth ground, Petitioner Millers alleges trial counsel provided ineffective assistance by not objecting to the testimony of a member of the CPT team "expressing personal belief of Defendant's guilt that impermissibly vouched and bolstered the victim's credibility."   ECF No. 1 at 6.   Miller raised this ground in state court as the third claim in his Rule 3.850 motion.   Ex. U at 7-9.   As with Grounds 1 and 3, however, as Respondent indicates, Miller did not raise the denial of the claim as a point of error in his pro se appeal of the denial of the Rule 3.850 motion.   *See* Ex. V; ECF No. 11 at 19.   Accordingly, Miller did not properly exhaust this claim in state court and it is now procedurally defaulted unless he can show cause for and prejudice from the default.

Regardless of any default, on the merits, the ground should be denied.   After the evidentiary hearing, the state post-conviction trial court denied the claim, making the following findings:

1.   In claim three the defendant alleges that trial counsel was ineffective for failing to object to . . . a member of the Child Protective Team (CPT) expressing her personal belief in the defendant's guilt and thereby bolstering the victim's credibility (trial transcript pages 187-188).

2.  Defense counsel said the comments did not jump out at her as being impermissible comments on guilt or credibility and

she did not see them as giving opinion testimony of either guilt or credibility.

3. A review of the trial transcript (pages 187-188) shows that comments of the CPT member were not expressing any personal belief regarding the defendant's guilt.   Nor are the comments being made to bolster the victim's credibility.

4. Nor has the defendant shown they in any way [were] mentioned again during the trial, much less that they became a feature of the trial.

5. The Court finds that trial counsel was not deficient for failing to object to the comments as they were not comments on guilt or credibility, but merely comments in the interview of the child designed to get the child to tell what happened.

6. The Court further finds that the defendant has failed to prove any prejudice from any alleged failure to object to the comments as they were never mentioned again and certainly did not become a feature of the trial.   In other words, the result of the defendant's trial has [not] been rendered unreliable, and the confidence in the outcome has not been undermined by any alleged failure to object to the comments of the CPT member.

7. Claim three is denied based on the foregoing.

Ex. U at 96-97.   The First DCA affirmed the order on appeal.   The state

court's ruling is entitled to deference and review is limited to the record

before the state court.   *See* Cullen, 131 S.Ct. at 1388.

The record supports the state court's ruling.   As the state court

found, the statement by the CPT interviewer was single and isolated, and

did not become a feature of the trial.   In particular, as transcribed in the

trial record, the portion of the video interview challenged by Miller took

place near the end of the tape, after B.C. had described what Miller had

done to her, and transpired as follows:

> THE INTERVIEWER:   Do you have any questions for me?
>
> THE CHILD:   (Inaudible)
>
> (Audio deleted)
>
> THE INTERVIEWER:   I'm not sure.   How come you asked that question?
>
> THE CHILD:   I was wondering because – why it happened to me because I didn't even do nothing to him.   I was actually trying to be a friend to him, but he just didn't want me to be a friend.
>
> THE INTERVIEWER:   Well, what he did was wrong, and you didn't do anything wrong, okay?
>
> THE CHILD:   (Nodding head affirmatively)
>
> THE INTERVIEWER:   You didn't do anything.   You're right. Because you were trying to be nice to him.   I think you did a terrific job in telling me what happened, okay?
>
> THE CHILD:   (Nodding head affirmatively)

Ex. H at 187-88.   In addition, at the evidentiary hearing on Miller's Rule

3.850 motion, his trial attorney testified:

> Q   . . . Now, did this interviewer ever say the defendant actually

committed the crime, other than agreeing with the child?

A   No, she wasn't there, no.

Q   And so there was no expression of guilt that the defendant had in fact committed the crime, just what the child's allegations were, that it was wrong.   So was there anything you saw particularly objectionable to that or, more importantly, particularly damaging to your case?

A   Well, I'm going to – you know, what I'm going to say is when I viewed the tape and we had the litigation about it, obviously that phrase did not jump out at me or else, you know – I asked for other stuff to be redacted.   So I'm going to tell you I just don't – you know, it just didn't jump out at me.   And I think, you know, if the tape were here to look at it and see what the context that statement was made in, it might make a difference.

Q   And if someone would have argued that – the prosecutor, for instance, would have made the argument, well, the interviewer obviously believed it and said that what the guy did was wrong and the child was right, that would have been something you objected to; wouldn't it?

A   Right, because there is case law on that.

Q   So to your knowledge this never became a feature of the trial or had been raised in any way?   It was one isolated statement in all the evidence in the trial?

A   Well, I would agree that there was no testimony where she gave an opinion about that, an expert opinion about that.

Ex. U at 36-37.   Given this record, the state court did not unreasonably

conclude defense counsel was not deficient.   *See generally, e.g.*, <u>Bates v.</u>

<u>Sec'y, Fla. Dep't of Corr.</u>, 768 F.3d 1278, 1299-300 (11th Cir. 2014) ("Our

task is 'not to grade counsel's performance,' <u>Strickland</u>, 466 U.S. at 697,

. . . or ask whether some novel, unenacted strategy might have led to a

better outcome for the client.   <u>Strickland</u> speaks only to the small class of

cases in which 'counsel was not functioning as the 'counsel' guaranteed by

the Sixth Amendment' at all . . . and does not operate as a catch-all

mechanism for 'fixing' trials we might have conducted differently.   The

record in this case demonstrates that [defense counsel] labored diligently to

defend his client.   He subjected the state's case to adversarial testing.").

Petitioner Miller has not shown that the state court's adjudication of

this ground involved an unreasonable application of clearly established

federal law or that it based on an unreasonable determination of the facts.

*See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

### Ground 5:   IAC – Child Abuse Interview Expert

In his fifth ground, Petitioner Miller asserts defense counsel provided

ineffective assistance by not consulting or retaining "a child abuse interview

expert regarding proper interview techniques."   ECF No. 1 at 9.   Miller

raised this ground as the fifth claim in his Rule 3.850 motion.   Ex. U at 98-

99.   As with Grounds 1, 3, and 4, however, as Respondent indicates, Miller

did not raise the denial of the claim as a point of error in his pro se appeal

of the denial of the Rule 3.850 motion.    *See* Ex. V; ECF No. 11 at 22.

Thus, Miller did not properly exhaust this claim in state court and it is now

procedurally defaulted and should not be considered unless Miller can

show cause for and prejudice from the default.

Regardless of any default, on the merits, the ground should be

denied.    After the evidentiary hearing, the state post-conviction trial court

denied the claim, making the following findings:

1. In claim five the defendant alleges that trial counsel was deficient for failing to consult and call a "child abuse interview expert" as a defense witness to attack the CPT member's interview of the child.

2. The defendant has failed to show any prejudice for any such failure.   At the evidentiary hearing the defendant failed to call a "child abuse interview expert" to put on any evidence to show what the expert could have testified to at trial and how the defendant was prejudiced by the failure to call the expert.   All the defendant has done was to speculate as to what an expert might have testified to and that is not sufficient evidence to meet his burden to prove prejudice in an ineffective assistance claim.

3. Trial counsel testified at the hearing that she made a decision not to call an expert because based on her extensive experience she did not need one in this case. The defendant has not shown through any evidence this decision was deficient.

4. Because the defendant failed to meet his burden of showing both deficient conduct on the part of trial counsel and prejudice from the alleged deficient conduct Claim

five is denied.

Ex. U at 98-99.   The First DCA affirmed the order on appeal.   The state

court's ruling is entitled to deference and review is limited to the record

before the state court.   *See* <u>Cullen</u>, 131 S.Ct. at 1388.

The record supports the state court's ruling.   As that court found,

defense counsel testified at the evidentiary hearing that she decided not to

call such an expert because she determined, in her experience, she did not

need one.   Ex. U at 41-42.   In particular, defense counsel testified:

> Q   No, on the allegation about the failure to hire a child abuse
> expert, you have indicated you tried a lot of these cases.
> Would it have been unusual for you not to have gotten a child
> abuse expert?
>
> A   I have never gotten one. . . .
>
> Q   So you had previously before this case been familiar with
> an ability to do so?   There may be some [experts] out there?
>
> A   Right.
>
> Q   But – so you would have at least made the conscious
> decision not to have sought one?
>
> A   Right, right.   And I think this case is probably the only –
> maybe a borderline one where I thought – I didn't like this CPT
> interviewer.   I think some of the ones in Tallahassee are a little
> bit less – she talked too much.   I'm not saying she was, you
> know, totally leading because I think I did argue some, you
> know, of that in – or tried to bring that out.   But she was
> definitely borderline.   But if I thought I needed to get one, I

would have.

*Id.*  This constitutes a considered, strategic decision.   *See* Strickland, 466

U.S. at 690-91 ("[S]trategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable

. . . .").   Moreover, as the state court explained, Miller did not offer anything

to support his assertion regarding what such an expert would have said

and, thus, did not meet his burden to prove any prejudice, even assuming

defense counsel performed deficiently in failing to secure such expert.

Petitioner Miller has not shown that the state court's adjudication of

this ground involved an unreasonable application of clearly established

federal law or that it based on an unreasonable determination of the facts.

*See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

### Ground 6:   IAC – Initial Review Post-Conviction Counsel

In his fifth ground, Petitioner Miller asserts his initial review post-

conviction counsel provided ineffective assistance because she "failed to

provide controlling points of law in support of arguments at evidentiary

hearing."   ECF No. 1 at 11.   As an initial matter, however, as provided in

AEDPA, "[t]he ineffectiveness or incompetence of counsel during Federal

or State collateral post-conviction proceedings shall not be a ground for

relief in a proceeding arising under section 2254."   28 U.S.C. § 2254(i).

*See* Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1343 (11th Cir. 2007)

(holding § 2254(i) explicitly bars claim alleging ineffective assistance of

state-appointed post-conviction counsel).   *Cf.* Martinez v. Ryan, 132 S.Ct.

1309, 1320 (2012) ("Martinez relies on the ineffectiveness of his

postconviction attorney to excuse his failure to comply with Arizona's

procedural rules, not as an independent basis for overturning his

conviction.   In short, while § 2254(i) precludes Martinez from relying on the

ineffectiveness of his postconviction attorney as a 'ground for relief,' it does

not stop Martinez from using it to establish 'cause.'").   Miller relies on

Martinez and urges this Court to consider this claim.   *See* ECF No. 1 at 12.

As the Eleventh Circuit has explained, however, Martinez did not "create a

freestanding claim for challenging a conviction or sentence based on the

alleged ineffective assistance of post-conviction counsel."   Chavez v.

Sec'y, Fla. Dep't of Corr., 742 F.3d 940, 944 (11th Cir. 2014).   Thus, this

ground provides no basis for federal habeas relief.

Further, Miller raised this claim in his state court petition for writ of

habeas corpus.   Ex. DD at 1-5.   The state trial court denied the petition by

order rendered January 17, 2014, finding:

Defendant's complaint involves the attorney appointed to represent him at the evidentiary hearing on his motion for postconviction relief.   Defendant alleges that counsel's failure to provide the court with a memorandum of law after the hearing to support her argument on one of the postconviction claims, as counsel promised him she would do, violated his right to due process.   In support, Defendant cites Luckey v. State, 84 So. 3d 423 (Fla. 5th DCA 2012), which held that a petition for writ of habeas corpus filed in the trial court is the proper vehicle to raise an argument that postconviction counsel was ineffective in failing to file an amended claim within the time period allowed by the trial court.   However, this case does not apply to Defendant's situation.   According to Defendant's motion, during the hearing, Defendant's postconviction counsel merely offered to prepare a memorandum of law if the court wanted her to.   As shown by the evidentiary hearing transcript, the Court made no such request.   *Exh. 1 – 4/26/12 Evid. Hearing Trans., pp. 53-54*.

This Court finds that Defendant is attempting to raise a claim of ineffective assistance of postconviction counsel.   Such claims are not cognizable.   Kokal v. State, 901 So. 2d 766, 777 (Fla. 2005).

*Id*. at 6-7.   Miller appealed and the First DCA affirmed the order.   Ex. EE.

The state court's ruling is entitled to deference and review is limited to the

record before the state court.   *See* Cullen, 131 S.Ct. at 1388.

The record supports the state court's findings denying Miller's claim.

In particular, near the conclusion of the Rule 3.850 evidentiary hearing, the

following occurred on the record:

MS. HOBBS [counsel for Miller]:   Yes, Your Honor, just briefly. You sat here through this.

With respect to claim number two, Mr. Miller is alleging that the jury was allowed to take the tape back.   And, Your Honor, even though counsel alleged she told the jury that she wants to point out this – focus on this issue in the tape, Your Honor, during closing arguments counsel always say, I want you to pay close attention to what this witness says.

But, Your Honor, that is just so inappropriate and prejudicial for a tape to have gone back to the jury.   Because you had Mr. Miller's testimony, you had Ms. Gray, you had the little girl, and you had the CPT person testifying.   You had four other pieces of testimonial evidence in the case.   And the only testimonial evidence that went back to the jury was this videotape with all of this stuff in this videotape and audiotape. The reliance that the jury placed on that is just totally inappropriate and prejudicial to Mr. Miller and his case.

His testimony is then diminished and everybody else's testimony in the case if the only thing that they have back there is the CPT tape, which she adamantly opposed even going into evidence, not to mention it is back there with the jury for them to just listen to over and over again.

The practice in this courthouse is they come back out here, they listen to the tape with everybody else.   I have been doing this for 25 years.   I have never one time been in a situation where an audio or a tape went back with the jury. The judge always brings the jury back out and everybody listens to it together so they will not put undue reliance on any one piece of evidence.

THE COURT:   Well, are there any cases that you are aware of, though, that say that that is, per se, prejudicial and fundamental error, or that there is even a presumption that that's –

MS. HOBBS:   I don't have a case for you today, Your Honor. But I'll tell you what, if the Court wants a memo of law, I would

be more than happy to do it because I am positive there is case law to suggest that you shouldn't send an audio or a videotape back with the jury like that.

THE COURT:   Well, suggests that you shouldn't do it or state that that's prejudicial?

MS. HOBBS:   I'm willing to venture that there is a case that says it is inappropriate and it is, per se, reversible error.   It wasn't there for it to be going up on direct because Ms. Whisnant didn't object to it.   So the issue was not even fleshed out on appeal.   So the only way he could get to it is through this post conviction motion.

Ex. U at 154-56.   Nothing indicates the judge requested Miller's post-conviction counsel to supply the authority or memorandum of law.   (At the conclusion of the hearing, the judge asked both sides to prepare proposed orders.   *Id.* at 162.   The record does not contain these proposed orders. *See* Ex. U.)

Petitioner Miller has not shown that the state court's adjudication of this ground involved an unreasonable application of clearly established federal law or that it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

## Conclusion

Based on the foregoing, Petitioner Leonoris Miller is not entitled to federal habeas relief.   The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.   The Clerk shall substitute Julie L. Jones for Michael D. Crews as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on October 3, 2016.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**